UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ALL ISLAND COUNTER TOPS & MILLWORK INC., ANDREA SPINARIS, AND STEVEN LIDONNICI,

                    Plaintiffs,

    -against-

TANIA SERPAS, ROMMEL GUTIERREZ, NICOLE HUEBNER, CARLOS VILLAFRANCA, ROBERT ALVARADO, JASON CASSAR, JESUS GUARDADO, JAIME ENRIQUE SANDOVAL, and ROTA STONE INC.,

                    Defendants.

------------------------------------------------------------X

<u>ORDER</u>
25-CV-0744 (JS)(LGD)

APPEARANCES

For Plaintiffs:    Enza Brandi, Esq.
                   The Enza Brandi Law Firm, PLLC
                   310 West Hills Road
                   Huntington Station, New York 11746

For Defendants:    Brian S. Schaffer, Esq.
                   Katherine K. Bonilla, Esq.
                   Fitapelli & Schaffer, LLP
                   28 Liberty Street, 30th Floor
                   New York, New York 10005

SEYBERT, District Judge:

Presently before the Court is the motion to dismiss filed by defendants Tania Serpas ("Serpas"), Rommel Gutierrez ("Gutierrez"), Nicole Huebner ("Huebner"), Carlos Villafranca ("Villafranca"), Roberto Alvarado Bonilla ("Bonilla"), Jason Cassar ("Cassar"), Jesus Guardado ("Guardado" collectively with the previous-named Defendants, the "Individual Defendants"), and Rota Stone Inc. ("Rota Stone" collectively with the Individual Defendants, the "Defendants") in the above-captioned action (the

1

"Action").  (See Motion, ECF No. 34; see also Am. Compl., ECF No. 19; Support Memo, ECF No. 34-6; Opp'n., ECF No. 35; Reply, ECF No. 36.) The Motion seeks to dismiss the complaint filed by Plaintiffs All Island Counter Tops & Millwork Inc. ("All Island"), Andrea Spinaris ("Spinaris"), and Steven Lidonnici ("Lidonnici" collectively with All Island and Spinaris, "Plaintiffs"), which alleges claims ranging from federal racketeering activity to state-law conversion.  Plaintiffs have additionally cross-moved to amend their complaint.  (See "Proposed Amended Complaint" or "PAC," Ex. C, ECF No. 35-4, attached to Opp'n.) Because Plaintiffs have failed to state a viable federal claim upon which relief can be granted, the Court GRANTS Defendants' Motion to Dismiss as to Plaintiffs' federal claims and declines to exercise jurisdiction over the remaining New York state law claims.  Because the PAC would similarly fail to state a viable federal claim, the Court DENIES Plaintiffs' Cross-Motion to Amend.

BACKGROUND

I.  **Relevant Factual Background**

All Island is a New York corporation specializing in countertop surfacing.  (Am. Compl. ¶ 13.) Individual Defendants were All Island employees during the events alleged in the Amended Complaint.[1]  (Id. ¶ 2.) Plaintiffs' Action arises out of an alleged

---

[1] The Amended Complaint names an additional Defendant, Jaime Enrique Sandoval ("Sandoval"), who is not a party to the Motion

2

"side business" the Individual Defendants conducted on All Island's time, using All Island's materials and infrastructure (the "Side Business").  (Id. ¶ 3.)

Plaintiffs allege, beginning on or about 2017, Serpas and Gutierrez (together with Heubner, the "Management Defendants"), organized the Side Business.  (Id. ¶¶ 50-51.) Serpas is alleged to have used Plaintiffs' QuickBooks[2] and online banking systems to order materials for the Side Business, while also falsifying sales tax resale certificates, which she had access to as All Island's Office Manager and Accounts Manager.  (Id. ¶ 17, 19.) Gutierrez allegedly oversaw the Side Business's day-to-day operations, and Heubner served as Serpas's assistant. (Id. ¶¶ 22, 25.) Villafranca, Bonilla, Cassar, and Guardado (the "Labor Defendants") provided the Side Business's labor.  (Id. ¶¶ 28-40.) Because the Individual Defendants allegedly used Plaintiffs' credit cards and materials, and because Side Business labor was conducted on All Island's time during business hours, Defendants conducted their purported activities without incurring overhead costs.  (Id. ¶¶ 3, 62, 63.) On or about September 27, 2023, Serpas

---

to Dismiss.  As such, this decision does not address the claims against him.

[2] "QuickBooks is a business management software that helps businesses manage finances, invoice customers, track your expenses and cash flow, accept payments."  How Does QuickBooks Work? QUICKBOOKS,    https://quickbooks.intuit.com/online/how-it-works/ (last visited April 27, 2026).

and Gutierrez allegedly formed the corporation Rota Stone for operating the Side Business.  (Id. ¶¶ 65, 134.)

On August 7, 2024, Villafranca was allegedly "videotaped stealing slabs of stone and loading them up to [All Island's] trucks for jobs completely unrelated to [All Island's] business," which was "confirmed" by an unnamed "witness."  (Id. ¶ 76.) Allegedly on or about October 2024, Plaintiffs discovered the Side Business.  (Id. ¶ 75.) In their Amended Complaint, Plaintiffs list several of the Side Business's purported "side jobs," along with customer names, dates, invoice numbers, and costs associated with those jobs.  (Id. ¶ 79.) Plaintiffs' investigation into the Side Business is ongoing.  (Id. ¶ 59.)

II.  **The Amended Complaint & Motion**

On February 10, 2025, Plaintiffs filed their initial federal[3] complaint. (See ECF No. 1.) On October 20, 2025, Plaintiffs filed the operative Amended Complaint, asserting wire fraud pursuant to 18 U.S.C. § 1343 (the "Wire Fraud Claim"), bank fraud pursuant to 18 U.S.C. § 1344 (the "Bank Fraud Claim"), federal Racketeer Influenced and Corrupt Organizations ("RICO")

---

[3] On December 13, 2024, Plaintiffs filed a similar complaint in New York state court asserting several causes of action.  (See State Court Compl., Ex. B, ECF No. 34-3, attached to Motion.) On the same day Plaintiffs filed the initial federal complaint, they voluntarily dismissed the State Court Complaint.  (See State Court Dismissal, Ex. B, ECF No. 36-3, attached to Reply.)

4

violations (the "RICO Claim"), and several New York state law claims.[4] (Am. Compl. ¶¶ 82-188.) Thus, the federal claims provide the primary asserted basis for federal jurisdiction.[5]

On November 10, 2025, Defendants served their Motion. (See Support Memo at 1.) As a threshold matter, Defendants frame the entire Action as All Island's retaliation for a January 10, 2025 Fair Labor Standards Act ("FLSA") lawsuit filed against All Island by many of the Defendants in this Action.[6] (Id. at 1-3.) On December 16, 2025, Plaintiffs served their Opposition, which denies retaliation and maintains their claims are properly pleaded. (See generally Opp'n.) The Opposition also includes a Cross-Motion seeking leave to file the Proposed Amended Complaint

---

[4] The New York state law claims are: (1) conversion; (2) common law fraud; (3) aiding and abetting fraud; (4) New York state RICO violations; (5) breach of fiduciary duty; (6) aiding and abetting breach of fiduciary duty; (7) unjust enrichment; (8) violations of the faithless servant doctrine; (9) imposition of a constructive trust over Rota Stone; and (10) equitable accounting. (Id. ¶¶ 82-96, 112-120, 130-189.)

[5] Plaintiffs additionally claim diversity jurisdiction is proper under 28 U.S.C. § 1332 because Heubner is a South Carolina citizen. This is incorrect. See Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2001) ("diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships") (emphasis added).

[6] The Defendants in the current Action that are Plaintiffs in the FLSA Action are Alvarado, Cassar, Guardado, Serpas, Gutierrez, and Heubner. See generally Alvarado et al. v. All Island Counter Tops & Millwork Inc. et al., No. 25-CV-174 (E.D.N.Y.). Although Defendants have not formally asserted any retaliation-based claims in this Action, the timing between the filing of the FLSA lawsuit and this Action may raise such questions.

(the "Cross-Motion to Amend").  (Opp'n at 37-40.) On January 12, 2026, Defendants filed their Reply.  (See generally Reply.)

DISCUSSION

I.   Applicable Law, Rule 12(b)(6), Generally

A claim is properly dismissed pursuant to Rule 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In determining whether to grant a Rule 12(b)(6) motion, courts must "accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor."  Glob. Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 154 (2d Cir. 2006).  To survive a motion to dismiss, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face."  Basile v. Levittown United Tchrs., 17 F. Supp. 3d 195, 200 (E.D.N.Y. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do[.]" Twombly, 550 U.S. at 555 (internal citations omitted).

6

II.  Application

The Court will address each federal cause of action below.[7]

a. Bank Fraud & Wire Fraud Claims

The Bank Fraud and Wire Fraud Claims cannot be independently maintained, as neither 18 U.S.C. § 1343 nor 18 U.S.C. § 1344 includes a private right of action.  See Nath v. Select Portfolio Servicing, Inc., 732 F. App'x 85, 87 (2d Cir. 2018) (wire fraud statute "is a criminal statute, and no private right of action exists under criminal statutes absent an indication that Congress intended to create such a private right of action, which is not present here"); see also Edmonds v. Seavey, No. 08-CV-5646, 2009 WL 2949757, at *6 (S.D.N.Y. Sept. 15, 2009), aff'd, 379 F. App'x 62 (2d Cir. 2010) ("there is no private cause of action under 18 U.S .C. § 1344"); Backer v. USD 30 Billion MTN Programme, No. 16-CV-6577, 2017 WL 6387732, at *6 (S.D.N.Y. Sept. 30, 2017) ("[a]lthough Plaintiff repeatedly invokes criminal wire fraud, bank fraud and money laundering statutes, none of these statutes provides a private right of action").  Accordingly, Defendants' Motion is GRANTED as to the Bank Fraud and Wire Fraud Claims.

---

[7] As Plaintiffs' federal claims are denied on the merits, the Court need not address Defendants' statute of limitations arguments. (See Support Memo at 37-38.)

b. <u>RICO</u>

RICO was enacted to "prevent organized crime from infiltrating America's legitimate business organizations" and was not designed to preempt the remedies available through "garden-variety state common-law causes of action." <u>Manley v. Doby</u>, No. 12-CV-4835, 2012 WL 5866210, at *3 (E.D.N.Y. Nov. 19, 2012) (quoting <u>Moccio v. Cablevision Sys. Corp.</u>, 208 F. Supp. 2d 361, 371 (E.D.N.Y. 2002)); <u>Gross v. Waywell</u>, 628 F. Supp. 2d 475, 488 (S.D.N.Y. 2009). RICO contains a criminal provision, <u>see</u> 18 U.S.C. § 1962, and a civil provision, <u>see</u> 18 U.S.C. § 1964. To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the [criminal] RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" <u>DeFalco v. Bernas</u>, 244 F.3d 286, 305 (2d Cir. 2001) (quoting <u>Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.</u>, 101 F.3d 900, 904 (2d Cir. 1996)). To satisfy a statutory RICO violation, Plaintiff must satisfy seven elements:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.
>
> <u>Moss v. Morgan Stanley, Inc.</u>, 719 F.2d 5, 17 (2d Cir.

1983) (quoting 18 U.S.C. § 1962(a)-(c)). "In the RICO context, a

8

plaintiff must plead predicate acts sounding in fraud or mistake according to the particularity requirement of [Federal Rule of Civil Procedure] Rule 9(b)." See D. Penguin Bros. v. City Nat. Bank, 587 F. App'x 663, 666 (2d Cir. 2014); FED. R. CIV. P. 9(b).

Plaintiffs allege their Bank Fraud and Wire Fraud claims constitute the two requisite predicate acts for a RICO claim. (Opp'n. at 16-18.) Both of these purported predicates are based upon Defendants' alleged scheme to defraud All Island, steal its money, and covertly use its materials and labor for the Side Business through online banking and internet communications. (Id.; Am. Compl. ¶¶ 97-111.) Defendants contend Plaintiffs failed to adequately plead either alleged predicate.  (Support Memo at 16-18.) In Opposition, Plaintiffs contend the Amended Complaint's list of thirty-nine purported "side jobs" and allegations about Serpas and Heubner's use of Plaintiffs' online banking accounts, along with "the fact pattern of the Amended Complaint," support "the knowing participation of each Defendant" in the alleged scheme.  (Opp'n. at 10-13.)

As a preliminary matter, "a RICO plaintiff who is not a financial institution . . . lacks . . . injury to bring a RICO claim based on bank fraud as the predicate act." Empire Merchs., LLC v. Reliable Churchill LLLP, No. 16-CV-5226, 2017 WL 5559030, at *13 (E.D.N.Y. Mar. 16, 2017) (quoting Edmonds, 2009 WL 2949757,

9

at *6 n.8).  This eliminates the Bank Fraud Claim as a potential predicate act.  The Court proceeds to address whether the Wire Fraud predicate has been pleaded with particularity.

"The essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme."  United States v. Shellef, 507 F.3d 82, 107 (2d Cir. 2007) (citation and quotation marks omitted). "[P]laintiffs must plead . . . mail [or wire] fraud with particularity, and establish that the [communications] were in furtherance of a fraudulent scheme" such that  "[a]llegations of predicate mail and wire fraud acts . . . state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent."  Angermeir v. Cohen, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014) (quoting Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 119 (2d Cir.2013); Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008)).

Plaintiffs' Wire Fraud Claim falls short of this standard.  The Amended Complaint contains little information about the listed "side jobs," including how the "cost" figures included in Paragraph 79 were ascertained, why some of the "side jobs" do not have costs associated with them, why these jobs in particular

were determined to be fraudulent, and any contemporaneous facts about any specific "side job." (Am. Compl. ¶ 79.) This list does not suffice to state the typical "who, what, where, when, and why" required to plead a fraud-based claim with particularity. See Angermeir, 14 F. Supp. 3d at 145. The Amended Complaint's overall "fact pattern" is similarly insufficient: the descriptions of Defendants' alleged roles summarized in paragraphs 16 through 48 merely follow a general format of describing (1) each Individual Defendant's job responsibilities for All Island, and (2) a series of conclusory claims about that Defendant's involvement with the Side Business. (Am. Compl. ¶¶ 16-48.) "[C]ourts in this Circuit have held that simple assertions of knowledge are insufficient." Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp., 667 F. Supp. 3d 83, 127 (S.D.N.Y. 2023) (quoting Landy v. Mitchell Petroleum Tech. Corp., 734 F. Supp. 608, 621 (S.D.N.Y. 1990)). Plaintiffs also do not quote to a single verbal statement made by any Individual Defendant, nor do they mention any affirmative misrepresentation that would have allowed the Individual Defendants to keep covert the Side Business for seven years.

Elsewhere, the Amended Complaint non-specifically groups all Defendants together. For example, Paragraph 58 states "Defendants attempted to cover up their theft as aforesaid by attempting to delete the relevant QuickBooks pages from the Plaintiffs' database," although it is unclear what role each

11

Defendant played in the alleged deletion.  (Am. Compl. ¶ 58); see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citing DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1249 (2d Cir.1987)) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'").  Similarly, Paragraph 60 states "Defendants cut, fabricated, sized, polished and otherwise prepared the materials for installation utilizing Plaintiffs' laborers and Plaintiffs' shop, tools, machinery, laborers, computer system, trucks and materials." (Am. Compl. ¶ 60.) Using QuickBooks seems inconsistent with the Labor Defendants' roles as pleaded in Paragraphs 16 through 48 of the Amended Complaint, just as stone cutting seems inconsistent with the Management Defendants' pleaded roles.  (Compare id. ¶¶ 16-48, with id. ¶¶ 58, 60.) It is also unclear how Rota Stone—a corporation—could have "cut, fabricated, sized, polished and otherwise prepared the materials for installation"[8] in the same way the Individual Defendants are alleged to have done.  Such group pleading is inconsistent with Rule 9(b)'s particularity requirements.  Mills, 12 F.3d at 1175; see also Alnwick v. Eur. Micro Holdings, Inc., 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003) (finding Rule 9(b)

---

[8] Paragraph 60 also states Defendants partook in this activity since 2017.  This allegation is inconsistent as to Rota Stone, which is alleged to have been incorporated in September 2023.  (See Am. Compl. ¶ 134.)

requirement "not met because the amended complaint lumps" several defendants together "and fails to specify what each defendant said"). Thus, Defendants' Motion is GRANTED as to the RICO Claim.

c. State Law Claims

Although federal courts have supplemental jurisdiction over state law claims, "a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). District courts have wide latitude in deciding whether to exercise supplemental jurisdiction and may decline to do so on their own initiative. See Id. at 122 (decisions to decline supplemental jurisdiction are reviewed for "abuse of discretion"); Piña v. Bank of Am. Corp., No. 25-1698, 2026 WL 1084619, at *1 (2d Cir. Apr. 22, 2026) (upholding district court's decision to decline supplemental jurisdiction "on its own initiative" where no viable federal claim remained). Because there are no remaining claims for which this Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

d. Leave to Amend

Plaintiffs' PAC makes modest revisions to the Amended Complaint. Its main revision is to include new factual allegations

13

stating: Defendants redirected All Island customers to the Side Business without Plaintiffs' or the customers' knowledge; the Management Defendants operated the Side Business from All Island's shop and modified All Island's invoices to direct payment to Defendants; the Labor Defendants were paid separately via Rota Stone; the Labor Defendants loaded materials onto Plaintiffs' trucks and, were paid separately; and, how each Defendant received customer sign-off sheets identifying only Plaintiffs' authorized jobs for each day.  (PAC ¶¶ 56, 66-77.) Other revisions to the PAC include: (1) supplemental allegations about interstate commerce (see, e.g., PAC ¶¶ 7, 9, 96), (2) removal of "information and belief" disclaimers (see, e.g., ¶¶ PAC 53, 55), and (3) a proposed mail fraud cause of action (the "Proposed Mail Fraud Claim") (PAC ¶¶ 112-118).

Plaintiffs argue their Cross-Motion should be granted due to the Second Circuit's strong preference for deciding cases on their merits.  See Prompt Nursing Employment Agency LLC v. Valdez, 222 F. Supp. 3d 194, 200 (E.D.N.Y. 2016).  Indeed, Rule 15 of the Federal Rules of Civil Procedure requires courts to "freely give leave [to amend] when justice so requires."  FED. R. CIV. P. 15(a)(2).  But the Court may deny a motion to amend where the proposed amendments are futile.  "An amendment is futile when the proposed new claim would not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."  Barker v. Rokosz, No.

14

19-CV-00514, 2021 WL 1062246, at *6 (E.D.N.Y. Mar. 18, 2021) (citing Milanese v. Rust-oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001)). Defendants argue the Court should take the latter approach. (Reply at 15-17.)

Because the PAC's proposed amendments would not cure the Amended Complaint's fatal deficiencies, the Court agrees with Defendants. The Proposed Mail Fraud Claim, like the Bank Fraud and Wire Fraud Claims, contains no private right of action and cannot be independently maintained. See Nath, 732 F. App'x at 87. Because the proposed additional facts still do not suffice to state a predicate act under Rule 9(b), the RICO Claim also cannot be maintained. See United States v. Greenberg, 835 F.3d 295, 305 (2d Cir. 2016) (quoting United States v. Binday, 804 F.3d 558, 569 (2d Cir. 2015)) ("Because the mail fraud and the wire fraud statutes use the same relevant language, we analyze them the same way"). The PAC's lack of particularity is perhaps best illustrated by the fact that only four of the twenty-four new paragraphs mention a specific Individual Defendant. (See PAC ¶¶ 7; 9; 56; 66-67; 70-78; 93; 112-118; 184; 197.) Even these four paragraphs do little to evince particularity: three paragraphs group together allegations about all Management Defendants (id. ¶¶ 66-67, 71), and the fourth

15

paragraph similarly groups together all Labor Defendants and Sandoval.[9] (Id. ¶ 72.)

Plaintiffs' contention that "the proposed amendment adds specificity to the fact pattern, clarifying that Defendants repeatedly used interstate delivery in their years-long scheme to steal Plaintiffs' materials" is unavailing.  (Opp'n at 38.) At best, these new allegations provide a somewhat more fleshed-out description of how the alleged scheme took place.  Although such a description may suffice to plausibly allege a state-level civil tort claim, Plaintiffs' basis for federal-court jurisdiction rests upon federal laws designed to safeguard against the gravest of fraud-based crimes, which require pleading with particularity. Here, Plaintiffs' proposed threadbare pleadings cannot suffice to support such serious, fraud-based claims.  See, e.g., Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., No. 05-CV-5934, 2009 WL 3245388, at *3 (E.D.N.Y. Sept. 30, 2009) (quoting Bell v. Hubbert, 2007 WL 60513, at *5 (S.D.N.Y. Jan. 8, 2007)) ("Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage

---

[9] For example, PAC Paragraph 71 says "Defendants Serpas, Heubner and Gutierrez, who worked from the shop, coordinated the installations to be performed on a daily basis," and PAC Paragraph 72 says "Villafranca, Bonilla, Cassar, Guardado and Sandoval, the mechanics, polishers and installers, loaded the daily onto the trucks and installations at the customers' locations."  (¶¶ 71-72.)

16

of the litigation.")).  Therefore, in the absence of the requisite particularity in pleading, Plaintiffs' Cross-Motion to Amend is accordingly DENIED.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion is **GRANTED** to the following extent:

I.   The Bank Fraud, Wire Fraud, and Federal RICO claims (i.e., the Federal Claims) are dismissed with prejudice as to Defendants;

II.  Because Plaintiffs have not stated a federal claim upon which relief can be granted, this Court declines to exercise supplemental jurisdiction over the remaining state law claims, which are dismissed without prejudice as to Defendants; and

**IT IS FURTHER ORDERED** that Plaintiffs' Cross-Motion to Amend is **DENIED** with prejudice as futile.

Additionally, because Sandoval was not a party to Defendants' Motion, **IT IS FURTHER ORDERED** that Plaintiffs are to file a status report explaining how they plan to proceed as to Sandoval by no later than **thirty days from the date of this Order.**

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: April 30, 2026
       Central Islip, New York

17